**Martha Rae JONES, Individually and as Surviving Widow and Community Survivor and Representative of Ila Florice Neal Jones and James Clay Jones, Sr., Survivors of the Estate of James Clay Jones, Jr., Appellants,**

v.

**RED ARROW HEAVY HAULING, INC., Appellee.**

**No. 09–90–135 CV.**

Court of Appeals of Texas, Beaumont.

Sept. 12, 1991.

Rehearing Denied Oct. 17, 1991.

Dale B. Tillery, Edwards and Tillery, Dallas, for appellants.

Robert A. Black, Mehaffy & Weber, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

Martha Rae Jones, individually and as surviving widow and community survivor and as representative of Ila Florice Neal Jones and James Clay Jones, Sr., survivors of the Estate of James Clay Jones, Jr., (hereafter referred to as "Jones") appeal a judgment for the Defendant, appellee Red Arrow Heavy Hauling, Inc. ("Red Arrow"). James Clay Jones, Jr. ("Decedent") was a self-employed truck driver who had contracted with Red Arrow to deliver freight in a trailer owned by Red Arrow. The registered owner of the truck was Tommy Tramel. Decedent was trying to start the truck from underneath the vehicle in an attempt to prevent it from getting stuck in mud during a sudden storm. He sustained fatal injuries when the truck rolled on top of him. Appellants' petition alleged Red Arrow breached its contract with Decedent by withholding sums from his paychecks for the purpose of obtaining coverage, then failing to obtain workers' compensation coverage for him. They also alleged violations of the Texas Deceptive Trade Practices Act ("DTPA") arising from representations made by Red Arrow concerning workers' compensation insurance. They also urged negligence and products liability theories in that Red Arrow failed to systematically inspect the truck and supplied or provided a defective truck to Decedent. The jury found for Red Arrow on all issues. Appellants raise thirteen points of error. Red Arrow brings one cross-point.

Red Arrow withheld sums from Decedent's paycheck for the purpose of obtaining workers' compensation insurance. Red Arrow admitted it never obtained such insurance. During the trial, Red Arrow introduced evidence that Martha Rae Jones filed a workers' compensation suit against Protective Insurance Company ("Protective") for death benefits pursuant to a policy covering Red Arrow's employees, and settled the suit for $72,000. The Protective policy provided benefits only to employees. Protective had denied coverage on the grounds Decedent was an independent contractor not covered under the policy.

Point of error one urges the trial court committed reversible error when it accepted as evidence information concerning Martha Rae Jones' workers' compensation

claim and settlement, including the amount of the settlement, because the evidence was a collateral insurance source and was irrelevant, inadmissible, and immaterial to any jury issue. Red Arrow contends the evidence was not collateral because Jones sued for breach of contract to provide workers' compensation coverage. Red Arrow argues receipt and amount of benefit is relevant to whether the contract was breached, whether the non-breaching party was damaged, and the amount of damages.

■■■■ The Protective settlement was a collateral source in the sense that it was not the result of a workers' compensation policy covering Decedent and was obtained from a party other than Red Arrow. The collateral source rule precludes a tortfeasor from obtaining the benefit of payment conferred upon the injured parties from sources other than the tortfeasor. RESTATEMENT (SECOND) OF TORTS § 920A. The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Decedent did not pay the premiums for the Protective policy or procure it independently of Red Arrow. However, whatever cause of action Jones had against Protective was in spite of and not because of Red Arrow's performance under the contract. Red Arrow was not a party to the prior litigation and the Protective judgment does not release Red Arrow.

One court of appeals, holding that the employer was not entitled to setoff for medical expenses paid to the employee through the employer's disability policy, stated "it is the nature of the payments, not their source, which is determinative of the question of the collateral source rule." *Southern Pacific Transportation Co. v. Allen*, 525 S.W.2d 300 (Tex.Civ.App.— Houston [14th Dist.] 1975, no writ). The Protective policy provided benefits only to employees. The Protective judgment stipulated that Protective denied that Decedent

was an employee of Red Arrow and that the settlement was not an admission of liability.

The principle that a party's liability is not reduced by payments or other benefits from collateral sources is less compelling in the case of a breach of contract than in the case of a tort. RESTATEMENT (SECOND) OF CONTRACTS § 347. The underlying principle is that a party should not benefit more from a contract's breach than from its performance. However, the policy under which Jones received the settlement was not a substitute for the policy Red Arrow agreed to obtain when it debited Decedent's paycheck. Decedent's status as an independent contractor would be immaterial under a policy procured to cover him specifically. Red Arrow did not plead a right to offset Jones' recovery by the amount of the settlement received from the insurance company. It was Red Arrow's burden to plead offset as an affirmative defense. *Brown*, 601 S.W.2d at 936. Thus, the issue to be decided is not whether the collateral source rule applies but whether evidence of settlement of the claim against the insurance company was admissible at trial.

■■■■ Evidence that the injured party received benefits from a collateral source is inadmissible under the rules of relevancy. *See Martinez v. RV Tool, Inc.*, 737 S.W.2d 17 (Tex.App.—El Paso 1987), *writ denied*, 747 S.W.2d 379 (Tex.1988). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R.CIV.EVID. 401. All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX.R.CIV.EVID. 403. Evidence which is not relevant is inadmissible. TEX.R.CIV.EVID. 402.

■■■■ The fact that Ms. Jones made a claim and received a settlement on an unrelated contract is not relevant to the question of whether a breach of contract occurred. It is undisputed that the Protec-

tive policy did not cover Decedent. Red Arrow also argues the settlement is relevant to the amount of damages recoverable for the breach of contract. We disagree. Jones had a claim that Decedent was a Red Arrow employee covered by the Protective policy. This claim was separate and distinct from a claim on a different insurance policy where Decedent's status as an independent contractor would be irrelevant. Jones would have recovered under such a policy regardless of her success or failure in asserting a claim against the workers compensation carrier for the company's employees. Red Arrow did not obtain such coverage. The settlement is not relevant to the material issues of Jones' breach of contract action.

We hold that the evidence of Jones' settlement with the workers' compensation carrier was not relevant and therefore inadmissible under TEX.R.CIV.EVID. 402. The jury heard that one of the plaintiffs received $72,000 from a lawsuit arising out of the death of Mr. Jones. Red Arrow's argument stressed that Jones had received a settlement and that the settlement was a good one. Red Arrow's expert witness testified that it was a good settlement because Decedent was not within the course and scope of employment and because the Joneses were not really married. These were contested issues in this trial. Thus, the jury not only heard that Ms. Jones had already been paid, they also heard that the amount of the settlement reflected the weakness of the case before the jury. We find the evidence erroneously submitted to the jury was so prejudicial that it was calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). Point of error one is sustained.

Points of error two and six complain of the trial court's failure to sanction appellees. Points of error three, four, five, seven, eight and nine complain of evidentiary rulings. Point of error ten complains of a charging error. Points of error eleven and twelve attack the factual sufficiency of jury findings. Point of error thirteen

urges cumulative error. Red Arrow's cross-point urges Jones' tort and DTPA claims are barred by the statute of limitations. In light of the disposition of point of error number one, we need not address those points.

The judgment of the trial court is reversed and remanded for a new trial.

REVERSED AND REMANDED.