**Jesus CASTILLO, Jr., Appellant,**

v.

**AMERICAN GARMENT FINISHERS CORPORATION, Appellee.**

No. 08–96–00267–CV.

Court of Appeals of Texas, El Paso.

March 5, 1998.

James B. Kennedy, Scherr & Legate, P.C., El Paso, Rodrigo V. Ramos, El Paso, for Appellant.

Carl H. Green, Steven L. Hughes, Mounce, Green, Myers, Safi, & Galatzan, El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Jesus Castillo, Jr. (Castillo) appeals from a judgment rendered in his favor against his

former employer American Garment Finishers Corporation (AGF). Castillo sued AGF, a non-subscriber under the Texas Worker's Compensation Act, for injuries resulting from Castillo's inhalation of chemical fumes at work. The jury found in Castillo's favor and awarded damages in the total amount of $3,686. The trial court awarded AGF a credit of $2,449.35 for the wage and medical benefits it paid to Castillo under AGF's employee benefit plan. The trial court rendered judgment for Castillo in the amount of $1,236.65. We reform the judgment in part and affirm as modified.

## FACTUAL SUMMARY

On August 21, 1990, Castillo began working as a stonewash machine operator at AGF. As part of his duties, Castillo washed blue jeans in a large washer with eighty to one hundred pounds of pumice stones and a solution of potassium permanganate. Occasionally, bleach was also used to lighten the color of the jeans. When a load finished, Castillo climbed inside of the washer to remove the jeans and stones and wipe up the excess solution. On August 29, 1990, Castillo noticed that he had a "raw feeling" or burning sensation in his chest after washing two or three loads. His chest continued to hurt throughout his shift and he later collapsed when climbing out of the machine. Castillo finished his shift, but continued to have difficulties breathing that evening. He went to the hospital the following day and was prescribed some medication. He also saw the company's doctor, Dr. Jimenez, who diagnosed his condition as tracheobronchitis and ordered him to remain absent from work for one week. Castillo later saw Dr. Mansfield, Dr. Lopez, and Dr. Nering. According to Castillo, he never returned to work after this incident because the company never told him to return. On cross-examination, however, he admitted that he did not return to work because his parole had been revoked and he was incarcerated. After his release from prison, he made no attempt to return to work at AGF.

Because Castillo testified in violation of an order *in limine* that AGF did not have worker's compensation benefits, the trial court permitted AGF to introduce evidence showing that it had paid more than $2,000 in wage and medical benefits to Castillo. After the close of evidence, Castillo stipulated that he had been paid wage benefits in the sum of $2,188.80 and medical benefits in the sum of $260.55 [1] for a total of $2,449.35. The jury awarded damages in Castillo's favor as follows: $500 for past mental anguish, $2,200 for past physical pain and suffering, $500 for past loss of earning capacity, and $486 in past medical expenses, for a total verdict of $3,686. The trial court awarded AGF a credit of $2,449.35 for the wage and medical benefits it paid to Castillo under AGF's employee benefit plan and rendered judgment for Castillo in the amount of $1,236.65.

## APPLICATION OF CREDIT

In Point of Error No. One, Castillo asserts that the trial court erred in applying the $2,449.35 credit for wage and medical benefits paid by AGF against the entire judgment. In addition to this contention, he complains that the trial court should have given the jury a limiting instruction with respect to the evidence showing AGF had paid wage and medical benefits. Still further, he alleges that the trial court should have instructed the jury to disregard the evidence showing these payments or to consider only any deficit remaining between the benefits paid to Castillo and the benefits to which Castillo was entitled. With respect to the latter two complaints, we conclude that error has been waived. Our review of the record reveals that Castillo failed to request a limiting instruction or any other jury instruction with regard to the payments made by AGF. TEX.R.APP.P. 33.1; TEX.R.CIV.P. 278 ("[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing"); TEX.R.CIV.EVID. 105(a)(in the absence of a request for a limiting instruction, the court's action in admitting evidence without limitation shall not be a

---

1. AGF paid $184 to Dr. Nering and $76.55 to Radiology Consultants. AGF did not, however, pay the remaining medical bills to Dr. Jimenez and Dr. Mansfield.

ground for complaint on appeal); *Aluminum Company of America v. Alm*, 785 S.W.2d 137, 139 (Tex.1990), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990)(party's failure to request limiting instruction allowed jury to consider evidence for all purposes).

Castillo does not challenge AGF's entitlement to a credit in some amount, but he argues that the credit should be applied solely against the amount awarded for past loss of earning capacity, $500, and the excess should not have been applied to the awards for mental anguish, pain and suffering, and unpaid medical expenses. AGF replies that this would result in a double recovery by Castillo since he received $2,188.80 in wage benefits.

■ Payments made by an employer under its accident policy covering on-the-job injuries do not constitute a collateral source. *Tarrant County Waste Disposal, Inc. v. Doss*, 737 S.W.2d 607, 611 (Tex.App.—Fort Worth 1987, writ denied).[2] Thus, in a non-subscriber negligence action, the employer is entitled to receive an offset in the judgment for those amounts paid under such a policy. *See Tarrant County Waste Disposal, Inc.*, 737 S.W.2d at 611. No case has directly addressed the issue presented here: Is the credit to be applied to the entire judgment, or must the trial court match the character of benefits paid with the character of specific damages found by the jury?

### Medical Benefits

■ To the extent the trial court awarded a credit for medical benefits paid by AGF against the amount of past medical expenses awarded by the jury, it erred. AGF paid $184 to Dr. Nering and $76.55 to Radiology Consultants. AGF did not, however, pay the remaining medical bills to Dr. Jimenez and Dr. Mansfield. The jury's award for past medical expenses does not include the medical bills paid by AGF because the jury was

asked only to assess the amount of medical and hospital care sustained in the past with respect to Dr. Jimenez and Dr. Mansfield, which they determined to be $111 and $375, respectively. Thus, application of the credit for the medical bills paid to Dr. Nering and Radiology Consultants against the medical bills unpaid by AGF unfairly deprives Castillo of a portion of this award. To this limited extent, Point of Error No. One is sustained; the judgment is reformed to delete the credit for medical bills in the sum of $260.55 and to reflect judgment rendered in favor of Castillo for the total sum of $1,497.20.

### Wage Benefits

■ Turning our attention to the credit for the wage benefits, AGF notes that other credits are applied against a verdict as a whole. The first example it offers is that of a settlement credit which is applied against the amount of damages to be recovered by the claimant. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.012(b)(Vernon 1997). Another situation in which a credit is applied against the entire verdict occurs when a worker's compensation carrier, which pays only wage and medical benefits, intervenes in an employee's lawsuit against a third party to recover benefits the carrier has paid to the employee. Although the employee may recover lost wages and medical expenses in addition to other damages not paid by the compensation carrier, the carrier's recovery for wage and medical benefits paid is not matched to or limited by the amounts found for lost wages and medical expenses. *See* TEX.LAB.CODE ANN. § 417.002(a)(Vernon 1996). In this analogous situation, we conclude that AGF should be given credit against the entire judgment for the wage benefits paid to Castillo. Otherwise, Castillo will reap the benefit of a windfall and AGF will be punished for paying those benefits to Castillo in the first place. Such a result would have the deleterious effect of encouraging non-subscribing employers to pay minimal benefits to injured

---

**2.** The collateral source rule precludes a tortfeasor from obtaining the benefit of payment conferred upon the injured parties from sources other than the tortfeasor. *Jones v. Red Arrow Heavy Hauling, Inc.*, 816 S.W.2d 134, 136 (Tex. App.—Beaumont 1991, writ denied). This rule is

based on the theory that juries may view a plaintiff's recovery as a double recovery and adjust their verdicts accordingly if they are permitted to consider collateral benefits. *Guerra v. Wal–Mart Stores, Inc.*, 943 S.W.2d 56, 61 (Tex.App.—San Antonio 1997, no writ).

employees. Point of Error No. One is over-ruled in its remainder.

### EXCLUSION OF EXPERT WITNESS

■ In his second point of error, Castillo contends that the trial court erred in excluding the testimony of his expert witness, Dr. Lyndon Mansfield, on the ground that Castillo failed to timely supplement his answers to interrogatories as to the substance of Dr. Mansfield's opinions. While he concedes that the trial court may have properly limited Dr. Mansfield's testimony due to the failure to supplement, he argues that the entirety of his testimony should not have been excluded.

### *Nature of Causation Testimony*

Dr. Mansfield is board certified in allergy and clinical immunology and in diagnostic laboratory immunology. He saw Castillo in June of 1991 and tested his lung function by means of a methacholine bronchial challenge. At the time of that examination, Dr. Mansfield was unaware of the chemicals, other than bleach, involved in the August 1990 incident. However, he was able to determine that Castillo had a toxic irritant exposure to some chemical. He also diagnosed allergic rhinitis or "year-round hayfever," meaning that Castillo had a propensity to form allergic responses to pollens but not necessarily small molecules. In December of 1993, Dr. Mansfield sent a brief report to Castillo's attorneys stating his findings. In the report, Dr. Mansfield noted that he had asked Castillo to provide him with some of the materi-als to which he was exposed, but Castillo had failed to do so. During the week before trial, Dr. Mansfield was for the first time made aware by Castillo's attorneys of the chemicals involved. Based on that information, Dr. Mansfield formulated an opinion that those chemicals, under the described conditions, would be capable of causing a toxic irritant reaction in the lungs.

In response to a request made by AGF in 1992 that Castillo identify his expert witnesses and produce the substance of their opinions, including their reports, Castillo identified Dr. Mansfield as an expert witness who would testify that Castillo had suffered permanent lung damage.[3] However, he did not provide AGF with the substance of Dr. Mansfield's opinions regarding the chemicals involved or causation until January 16, 1996 when Dr. Mansfield's December 1993 and January 1996 reports were delivered to AGF's attorneys. Trial began on January 22, 1996.

AGF moved to exclude Dr. Mansfield's testimony on the ground that Castillo failed to timely supplement his interrogatory answers with the substance of Dr. Mansfield's opinions. In an effort to establish good cause, Castillo's attorney explained that he was unable to provide Dr. Mansfield with the information regarding what chemicals were involved in the August 1990 incident until he spoke with Castillo upon his release from prison in January of 1996. Castillo testified that he had been unable to contact "the outside world" during his incarceration.[4] He

---

3. Although Castillo has not included the interrogatory and response in the record, these matters were read aloud during the hearing. Interrogatory: "Please identify each expert whom you expect to call or may call at the time of the trial in this case and give the subject matter of the testimony, mental impressions and opinions, as well as the facts known to each such expert which relate to or form the basis of the mental impressions or opinions of each such expert." Response: "The health care providers will testify that I have injury to my lung, head, back and other parts of my body. They will testify that I have impairment, past and future pain, past and future suffering, past and future mental anguish, past and future lost wage earning capacity, past and future medical bills caused by the incident, that I suffer limitations and restrictions at work, household services and everyday life. They will testify regarding their treatment, my conditions,

prognosis, diagnosis, and may explain their findings and opinions, particularly with reference to the conditions and treatments in the past and future. Additionally, the medical care providers will discuss or identify the facts known to them regarding my condition, my accident, and how various conditions occurred, the information on the subject matter facts known and opinions of the expert witnesses to the extent that we know them, are set forth in the records and reports."

4. Following the revocation of his parole, Castillo was incarcerated from a few days before Christmas of 1990 until April or May of 1991. Upon his release, he did not return to work but instead remained at home for one year to care for an infant son. He was again imprisoned in May of 1994 and was released on January 12, 1996.

admitted, however, that he could have written his attorney. Castillo did not dispute AGF's claim that the information provided to Dr. Mansfield only the week before trial had been available to Castillo's attorneys as early as May of 1993. The trial court excluded Dr. Mansfield's testimony regarding his opinions but admitted evidence of his reasonable and necessary bills for services rendered to Castillo.

### Procedural Basis

Rule 166b(6)(b) of the Texas Rules of Civil Procedure provides that if a party expects to call an expert witness when the subject matter of the expert's testimony has not been previously disclosed in response to an appropriate inquiry, the response must be supplemented to include the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty days prior to the beginning of trial except on leave of court. TEX.R.CIV.P. 166b(6)(b). The trial court excluded Dr. Mansfield's testimony pursuant to TEX.R.CIV.P. 215(5) which provides that:

> A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of any expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

The salutary purpose of Rule 215(5) is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914 (Tex.1992). This requirement of completeness includes full discovery of the mental impressions and opinions of experts prior to trial. *Exxon Corp. v. West Texas Gathering Co.,* 868 S.W.2d 299, 305 (Tex. 1993). The rule is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition. *Alvarado,* 830 S.W.2d at 914. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. *Id.* The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause. *Id.*

Rule 215 does not, however, mandate exclusion of the entire testimony of an expert who is, as in this case, objected to on grounds other than a failure to identify. *Clark Equipment Co. v. Pitner,* 923 S.W.2d 117, 122 (Tex.App.—Houston [14th Dist.] 1996, writ denied); *Smith v. O'Neal,* 850 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1993, no writ). The rationale for excluding an unidentified witness's testimony, despite lack of surprise, unfairness or ambush, is to assure that, in preparing for trial, a party can rely on no unidentified witnesses being called to testify. *Clark Equipment,* 923 S.W.2d at 122, *citing Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990). Where a witness is properly identified, the rationale for total exclusion does not exist, and the issue is whether his testimony should be limited because of an inadequate discovery response or supplementation. *Clark Equipment,* 923 S.W.2d at 122; *see Melendez v. State,* 902 S.W.2d 132, 136 (Tex.App.—Houston [1st Dist.] 1995, no writ).

### Standard of Review

### No Abuse of Discretion

In January of 1992, Castillo identified Dr. Mansfield as an expert witness and indicated the substance of his expected testimony as set forth in footnote 3. He did not timely supplement his discovery response to indicate Dr. Mansfield's opinion regarding causation. Thus, Castillo was required to establish good cause for admission of this portion of Dr. Mansfield's testimony. In determining whether good cause exists, the trial court may consider: (1) inadvertence of counsel; (2) lack of surprise, unfairness, or

ambush; (3) uniqueness of excluded evidence; and (4) whether or not the witness was deposed. *Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,* 927 S.W.2d 146, 156 (Tex.App.—Corpus Christi 1996, no writ); *Patton v. Saint Joseph's Hosp.,* 887 S.W.2d 233, 239 (Tex.App.—Fort Worth 1994, writ denied). Based upon the evidence before it, the trial court could have found that the failure to supplement was due solely to the neglect of Castillo's counsel in failing to timely provide Dr. Mansfield with the information necessary to render an opinion regarding proximate cause. Castillo offered no evidence to establish that AGF, which had not deposed Dr. Mansfield, was not surprised by his testimony. While Dr. Mansfield may have been the only expert expected to testify regarding proximate cause, this factor standing alone does not demonstrate good cause. Thus, the trial court did not abuse its discretion in excluding this portion of Dr. Mansfield's testimony. Even if it can be said that good cause exists for admission of the testimony, the jury found that AGF's negligence was the proximate cause of Castillo's injuries even without Dr. Mansfield's testimony. Consequently, the exclusion of this evidence did not cause the rendition of an improper judgment. *See* Tex.R.App.P. 44.1(a)(1).

### Nature of Testimony Related to Proof of Dr. Mansfield's Medical Bills

Because Castillo timely identified Dr. Mansfield as an expert witness and provided the substance of his testimony with respect to his reasonable and necessary medical bills, the existence of Castillo's lung injury, and Castillo's past and future pain and suffering, the trial court erred in excluding this portion of his testimony. AGF argues that any error in excluding this portion of the testimony is harmless because it did not cause the rendition of an improper judgment. *See* Tex.R.App.P. 44.1(a)(1). We agree. Although Dr. Mansfield would have testified that his medical bill was reasonable and necessary, Castillo presented other evidence to establish this fact and the jury awarded him the full amount of that bill. Accordingly, exclusion of this evidence is harmless. Dr. Mansfield would have also testified that he expected Castillo to have pain and suffering as a result

of this lung injury. However, Castillo testified in detail about his pain and suffering, and the jury awarded him a relatively larger sum for these damages. We are unable to conclude that exclusion of this testimony probably resulted in the rendition of an improper judgment. Point of Error No. Two.is overruled.

### EXCLUSION OF EVIDENCE RELATING TO DR. LOPEZ'S MEDICAL BILLS

In Point of Error No. Three, Castillo raises three complaints about the trial court's exclusion of evidence pertaining to the medical bills of Dr. Hector Lopez: (1) the trial court erred in excluding the testimony of a non-expert custodian of records that the bills were reasonable and necessary; (2) the court erred in excluding the invoice; and (3) the court refused to submit a jury question on Dr. Lopez's past medical costs.

Castillo attempted to establish through the live testimony of the custodian of records that the charges for Dr. Lopez's services were reasonable and necessary. The trial court sustained AGF's objection and excluded the testimony and bills. Castillo relies solely upon Section 18.001 of the Texas Civil Practice and Remedies Code to support his position that a non-expert custodian of records is permitted to testify that medical bills are reasonable and necessary. Section 18.001, in pertinent part, provides:

> (b) Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex.Civ.Prac. & Rem.Code Ann. § 18.001(b)(Vernon 1997).

The affidavit must be taken before an officer with authority to administer oaths, be made by the person who provided the service or the person in charge of records showing the service provided and charge made, and

include an itemized statement of the service and charge. TEX.CIV.PRAC. & REM.CODE ANN. § 18.001(c). The affidavit must be filed with the clerk of the court and a copy must be served upon all other parties to the case at least thirty days before evidence is first presented at trial. TEX.CIV.PRAC. & REM.CODE ANN. § 18.001(d).

■ Section 18.001 is an evidentiary statute which accomplishes three things: (1) it allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges which would otherwise be inadmissible hearsay; (2) it permits the use of otherwise inadmissible hearsay to support findings of fact by the trier of fact; and (3) it provides for exclusion of evidence to the contrary, upon proper objection, in the absence of a properly-filed counter affidavit. *Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex.App.—Eastland 1995, no writ). Castillo reasons that since a non-expert custodian of records may by affidavit establish the reasonableness and necessity of medical charges, the custodian of records should be permitted to offer live testimony of the same facts. Ordinarily, expert testimony is required to establish that medical expenses are reasonable and necessary. *American Central Insurance Co. v. Melton*, 389 S.W.2d 177, 180–81 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *see* TEX.R.CIV.EVID. 702. Section 18.001 provides a limited exception to this general rule but it applies only if the requirements of Section 18.001 are satisfied by the offering party *and* if another party does not file a counter affidavit. While the Legislature has chosen to provide for the admissibility of an uncontested affidavit of a non-expert custodian of records which establishes the reasonableness and necessity of medical expenses, it has not provided that a custodian of records is competent to offer live testimony of these same facts. Further, allowing a non-expert custodian to testify in this fashion would deprive a party of its ability under Section 18.001 to file a counter affidavit and force the plaintiff to prove reasonableness and necessity by expert opinion at trial. Consequently, if we expanded the exception in the manner suggested by Castillo, the exception would swallow the rule.

■ Regarding Castillo's complaint that the court erred in excluding the bill, the bill was properly excluded as irrelevant since Castillo failed to establish that the charges for Dr. Lopez's services were reasonable and necessary. TEX.R.CIV.EVID. 401. Finally, in the absence of any evidence to support the issue, the court did not err in refusing to submit a question to the jury in connection with Dr. Lopez's charges. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992)(issue is properly refused in absence of evidence to support it); TEX.R.CIV.P. 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). Point of Error No. Three is overruled.

## SUFFICIENCY OF THE EVIDENCE

■ In Point of Error No. Four, Castillo alleges that the amount awarded by the jury for past loss of earning capacity is against the great weight and preponderance of the evidence. "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. When the party having the burden of proof complains of an unfavorable finding, the point of error should allege that the findings "are against the great weight and preponderance of the evidence". The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *Neily v. Aaron*, 724 S.W.2d 908 (Tex.App.—Fort Worth 1987, no writ).

■ The test for factual insufficiency points is set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex. App.—El Paso 1981, no writ). The jury's

finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *Id.* The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust", limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." *See, e.g., Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994); *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied). Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury, provided the jury finding is supported by probative evidence and is not against the great weight and preponderance of the evidence. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

It is undisputed that Castillo never returned to work at AGF after his injury. The submitted question asked the jury to determine what amount of money would fairly and reasonably compensate Castillo for his loss of earning capacity sustained from the August 1990 injury up to December 31, 1990. The jury awarded $500. At the time of his injury, Castillo earned $3.80 per hour and worked forty hours per week. Based upon these figures, and his testimony regarding his physical limitations after his injury, he reasons that the jury should have awarded a greater sum of money for his loss of earning capacity during this time period.

As a result of his September 1, 1990 diagnosis that Castillo suffered from tracheobronchitis, Dr. Jimenez excused Castillo from work for one week. Although Castillo testified that he continued to suffer from the same pain and burning in his chest for two weeks after the injury, he did not return to Dr. Jimenez for a scheduled follow-up visit. X-rays showed his lungs to be normal. Approximately once a week thereafter, he suffered episodes of shortness of breath, particularly at night, and he would occasionally have pains in his chest. At the time of trial, he continued to experience shortness of breath and as a result had been required to limit his physical activities. During cross-examination, Castillo admitted that he did not return to work during the August to December time period, not because of his injuries, but because the company never called him and told him to return. Further, he testified that he made no effort to return to work at AGF after his release from prison but instead returned to work in his former occupation as a painter.

Given this evidence, the jury could have reasonably concluded that Castillo did not suffer a loss of earning capacity for the entire period of August 29 until December 31, 1990, and that the sum of $500 adequately compensated him for those damages. The jury's determination is not against the great weight and preponderance of the evidence. Point of Error No. Four is overruled.

## COSTS ON APPEAL

■ In his final point of error, Castillo requests that all costs of appeal be taxed against AGF because the cost of the appeal will exceed any judgment he recovers. Rule 43.4 of the Texas Rules of Appellate Procedure governs the assessment of costs in a civil appeal. It provides:

> In a civil case, the court of appeal's [sic] judgment should award to the prevailing party the appellate costs—including preparation costs for the clerk's record and the reporter's record—that were incurred by that party. But the court of appeals may tax costs otherwise as required by law or for good cause.

Tex.R.App.P. 43.4.

Although Castillo has, to a limited extent, prevailed in this appeal in that we found the trial court erroneously applied the credit for medical benefits paid for past medical expenses, we decline to assess costs against AGF. The reporter's record consists of 806 pages and includes 172 pages of voir dire. Because Castillo has raised no point of error pertaining to voir dire, unnecessary portions of the reporter's record have been filed. Further, we sustained only a limited portion

of the first point of error which resulted in a reformation of the judgment by only $260.55. Presentation of that entire point of error required only a small portion of the reporter's record, but Castillo failed to avail himself of the provisions of former TEX.R.APP.P. 53(d).[5] Further, Castillo did not attempt to utilize the rules providing for an appeal by an indigent; indeed the record reflects that he deposited with the district clerk $1000 in cash in lieu of the cost bond on appeal.[6] Under these circumstances, we find good cause exists to require Castillo to bear all costs of the appeal. Point of Error No. Five is overruled.

The judgment as reformed is affirmed.

---

**5.** Former Rule 53(d) entitled an appellant to bring forward a partial statement of facts provided he included in the request for the record a statement of the points of error to be relied upon. Compliance with this rule triggered a presumption on appeal that nothing omitted from the record was relevant to any points of error designated. This presumption did not encompass challenges to the sufficiency of the evidence. *Land v. AT & S Transp., Inc.,* 947 S.W.2d 665, 667–68 (Tex.App.—Austin 1997, pet. filed). We recognize that Castillo has challenged the factual sufficiency of the evidence to support a particular jury finding. However, that issue has been resolved against him. The Texas Rules of Appellate Procedure were amended effective September 1, 1997. New Rule 34.6(c)(4) expands application of this presumption to legal or factual insufficiency challenges.

**6.** Former Rule 40(3) provided a mechanism by which an appellant could prosecute an appeal without payment of the bond to secure costs or the cash deposit in lieu thereof, and without payment for the preparation of the statement of facts. Pursuant to the amended rules, security for costs on appeal is no longer required.