In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00607-CV
_____

**JAMA BRISCO FLYNN, Appellant**

**V.**

**SANDRA OLSEN RACICOT, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. CIV24516**

**MEMORANDUM OPINION**

Jama Brisco Flynn drove her vehicle into a vehicle driven by Sandra Olsen Racicot on June 6, 2008. Flynn admitted responsibility for the accident. She was issued a traffic citation for failure to control speed.

Racicot filed a personal injury suit against Flynn. The parties waived the right to a jury trial and presented the case to the judge. The court awarded Racicot $98,133.00, plus interest.

AFFIDAVITS

Flynn argues the trial court erred when it admitted in evidence certain affidavits relating to medical expenses and services. A plaintiff has the burden of proving the amount of medical expenses and of establishing the reasonableness and necessity of those expenses. *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Expert testimony may prove this. *Castillo v. Am. Garment Finishers Corp.*, 965 S.W.2d 646, 654 (Tex. App.—El Paso 1998, no pet.). Section 18.001 of the Texas Civil Practice and Remedies Code provides an alternative method of proof. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West 2008); *Castillo*, 965 S.W.2d at 654. Section 18.001(b) states:

> Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b). The statute provides that the affidavit may be made either by the person who provided the service or by a records custodian, and must be served on opposing counsel at least thirty days before the day on which evidence is first presented at the trial of this case. *See id.* § 18.001(c)-(d).

The affidavit is admissible "only if the offering party satisfies the requirements of section 18.001(b) *and* the opposing party fails to file a controverting affidavit." *Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.) (citing *Castillo*,

2

965 S.W.2d at 654). By filing a proper controverting affidavit, the opposing party can require the offering party to prove at trial the reasonableness and necessity through expert testimony. *See id.* (citing *Castillo*, 965 S.W.2d at 654).

Flynn did not file a controverting affidavit. She does not argue that the affidavits filed by Racicot do not comply with the formalities required by section 18.001. Instead, Flynn maintains that "[t]he affidavits should have been excluded" because "the affiants are not qualified to submit expert testimony as to the reasonableness and necessity of other medical providers' care and treatment of [Racicot] and/or causation in regard to same." But this argument primarily addresses the sufficiency of the evidence to support some of the damage and causation findings rather than the admissibility of the affidavits.

By enacting section 18.001, "the Legislature has chosen to provide for the admissibility of an uncontested affidavit of a non-expert custodian of records which establishes the reasonableness and necessity of medical expenses[.]" *Castillo*, 965 S.W.2d at 654; *see also Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007) ("Affidavits proving up the medical bills are evidence that expenses were reasonable in amount and necessary for treatment of [the plaintiff]'s conditions, but the bills are not evidence of what all the conditions were nor that all the conditions were caused by the accident."). Because the affidavits comply with the statute, and Flynn did not file a controverting affidavit, the affidavits were admissible. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001; *see also* Tex. R. Evid. 803(4), (6).

3

In making findings, the trial court was not limited to the affidavits. Medical records accompany the affidavits and the answers given in depositions upon written questions. *See* Tex. R. Civ. P. 200. Flynn did not object at trial that the medical records do not satisfy the hearsay exceptions of Rule 803(4) and (6). The Supreme Court has explained as follows:

> The diagnoses contained in [the] medical and hospital records are admissible. However, to constitute evidence of causation, an expert opinion must rest in reasonable medical probability. This rule applies whether the opinion is expressed in testimony or in a medical record, as the need to avoid opinions based on speculation and conjecture is identical in both situations. Reasonable probability is determined by the substance and context of the opinion, and does not turn on semantics or on the use of a particular term or phrase.

*Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995) (citations omitted). Flynn did not object that the opinions and diagnoses in the medical records were not based on reasonable medical probability, or that the doctors who expressed the opinions and diagnoses in the records were unqualified. *See id*. Nor did she object that Racicot's statements in the records were not "reasonably pertinent to diagnosis or treatment." *See* Tex. R. Evid. 803(4). The judge could determine whether a diagnosis or opinion was based on reasonable probability by "the substance and context." *See Crye*, 907 S.W.2d at 500. Flynn has not shown that the trial court erred in admitting the affidavits, deposition answers, and medical records in evidence.

SUFFICIENCY

Flynn also contends that the evidence was factually insufficient to support the damages awarded. When a trial court issues findings of fact following a bench trial, the court's findings are reviewable for sufficiency of the evidence under the same standards applied in reviewing the evidence supporting a jury verdict. *Anderson v. City of Seven Points*, *Tex.*, 806 S.W.2d 791, 794 (Tex. 1991). An appellate court ordinarily does not substitute its judgment for that of the trier of fact on whether a witness is credible. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In reviewing a factual sufficiency issue, a court weighs all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Findings may be overturned on the ground of factual insufficiency only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

The Supreme Court has explained that "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara*, 247 S.W.3d at 668-69 (citing *Crye*, 907 S.W.2d at 499). Flynn asserts that Racicot offered no medical evidence of the causal link between her alleged injuries and the incident made the basis of this suit. She argues that Racicot relied only on her own testimony, called no medical witnesses, and offered only

5

affidavits of records custodians. But this non-expert evidence was supported by treating physicians' medical opinions and diagnoses contained in the medical records properly admitted in evidence. *See Crye*, 907 S.W.2d at 500.

Racicot has a long history of back problems. She testified that in 1978 she fell on her "tailbone." She experienced a kick in the same area the same year. In 1982, she fell and experienced low back pain and numbness and tingling in her legs and feet. She fell in 1993 and twisted her back in 1995. Over the next few years, she was diagnosed with degenerative disc disease and osteopenia. Racicot continued to have back and neck problems, and in 2000 she had a fusion operation for a herniated-disc condition. The doctor put a titanium cage in her back, and she wore a brace for six months after surgery. Racicot then returned to work and continued to have follow-up appointments with the doctor. She testified that her back had improved "80 percent" but she still had back trouble and continued to take medication for the pain. Racicot indicated at trial that her pain before the accident with Flynn was manageable.

Flynn cross-examined Racicot concerning medical records in which Racicot's treating physicians noted she complained of back pain after the fusion but prior to the accident. Flynn also introduced into evidence a "Letter of Appeal," written by Racicot in 2006, that states she "needs more back su[rg]ery to repair what was done" and that "[t]he problems in my back causes nerve pain, numbness in both legs and feet . . . ." Although Racicot testified she did not remember writing or sending the letter, she admitted the

handwriting was hers. She testified that her claims in the letter were not truthful. Just two months prior to the accident, Racicot visited her doctor who increased her medication dosage and noted that her "pain in low back has been getting worse" and that it "hurts [Racicot] to bend."

Flynn and Racicot stipulated that $6,957.00 is the amount of Racicot's past medical expenses between the date of the accident and the date of trial. The trial court awarded that amount. Although Flynn testified that she only "bumped into" Racicot's vehicle, the impact caused $5,385.20 in damages to Flynn's vehicle. Racicot testified that the impact "pushed [her vehicle] about 20 feet off from the roadway onto the asphalt shoulder." After refusing medical treatment, Racicot finished making a delivery of supplies. She testified that about two hours after the accident she experienced "some real sharp pains about the middle part of [her] back shooting up to [her] left side in [her] back." That night she took Tylenol for the pain and continued taking Tylenol for the pain throughout the weekend.

On Monday following the Friday accident, Racicot, who was still experiencing pain, called her doctor and told him about the accident. She asked for an appointment. She was instructed to go to the emergency room if she was "hurting real bad." Racicot went that day to Memorial Medical Center in Livingston. The medical records show that Racicot complained of back, neck, knee, and nerve pain related to an automobile accident that she reported had occurred several days earlier. The doctor's notes that day state that

7

Racicot complained of back injury caused by a car accident. He ordered x-rays and found tenderness in her back. He diagnosed her with a back strain and a contusion. The doctor prescribed Motrin and Cymbalta and told her to get some rest. X-rays showed normal cervical spine and lumbar except for the prior fusion of L-5/S-1.

Racicot saw her doctor at Family Health Clinic and complained of back pain. He ordered an MRI and an EMG which she underwent on June 13, 2008. On June 18, 2008, her doctor diagnosed her with L-5/S-1 bilateral radiculopathy, and disc protrusions at L-3/4 and L-4/5. The doctor referred her for physical therapy three times a week for four weeks.

Racicot attended physical therapy sessions. The medical records for Livingston Physical Therapy include the diagnosis on July 10, 2008, of compression fracture thoracic, cervical strain, and lumbar strain, and a note that "[p]atient involved in [motor vehicle accident] while working." The records listed Racicot's current function as "b[a]d mobility: slow and stiff." Racicot explained at trial that she was experiencing pressure in her tailbone and upper hips, nerve pain in her legs, and a stiff back. She described the pain as different from the pain she had experienced prior to the accident.

Racicot was treated at Renaissance Surgery Center on August 21, 2008. She was admitted for transforaminal L5-S1 selective nerve root blocks with myofacial injections. Racicot returned in October 2008 to her doctor at Family Health Clinic and complained of back pain.

8

In January 2009, Racicot began working as a correctional officer for the Texas Department of Criminal Justice. From the time she began the new job until the time of trial, she had not missed any work as a result of injuries from the accident. Returning to Family Health Clinic on April 16, 2010, she was still complaining of back pain. A CT scan of her cervical and lumbar spine was performed on April 20, 2010.

MEDICAL EXPENSES

In challenging the trial court's award of damages for Racicot's past and future medical expenses, Flynn argues that Racicot offered no medical testimony establishing the reasonableness or necessity of the treatment for her injuries, and that Racicot only offered the business records affidavits of custodians of records "none of whom was a medically qualified witness." Flynn asserts that Racicot "provided no factual evidence linking her medical treatment to the incident forming the basis of this suit or distinguishing her current complaints from her long-standing medical history."

The Texas Supreme Court noted in *Guevara* that "[i]n personal injury cases, trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence, and the course of the injured person's physical condition and progress after the occurrence." *Guevara*, 247 S.W.3d at 666-67. The Court explained that lay testimony about a pre-accident condition or other events leading up to the accident, the accident, the police officer's accident report, and medical treatments after the accident may be evidence that establishes a sequence of events

proving a strong, logically traceable connection between the accident and the injury. *See id*. at 667. The evidence may be sufficient to support causation findings between the accident and the injuries which "(1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents." *Id.* at 667. In *Guevara*, the medical records provided insufficient information regarding the conditions for which the plaintiff was treated. *Id.* at 669 ("Nor do the few medical records for admission and consultation by physicians several months after the accident provide the causal link."). The Court noted that the histories were neither consistent with each other or with the testimony as to the pre-accident condition. *Guevara*, 247 S.W.3d at 669, n.4.

The presence of a medical condition before an accident may complicate a causation connection and require expert evidence to support causation. *See id.* at 669 ("Those histories do not purport to be diagnoses of Arturo's previously treated conditions nor to relate his conditions to the accident."); *Crye*, 907 S.W.2d at 500. The fact that a plaintiff has a pre-existing condition, however, does not absolve the defendant of responsibility for an aggravation of the pre-existing condition caused by the accident. *See Coates v. Whittington*, 758 S.W.2d 749, 752 (Tex. 1988) (orig. proceeding) ("[A] tortfeasor takes a plaintiff as he finds him."). And expert evidence may take the form of

10

expert diagnoses based on reasonable probability contained in properly admitted medical and hospital records. *See Crye*, 907 S.W.2d at 500.

The trial judge in this case considered medical records prior to the accident, the accident report, the testimony, and post-accident medical records. The medical records and Racicot's testimony provide information regarding her pre-accident and post-accident condition. *See, e.g., Figueroa v. Davis*, 318 S.W.3d 53, 60-61 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The trial court's finding that the expert and non-expert evidence provided a causal link between the accident and the stipulated amount for post-accident medical treatment until the time of trial is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772.

To support an award of future medical expenses, the plaintiff must show there is a reasonable probability that the medical expenses will be incurred in the future. *Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *see City of San Antonio v. Vela*, 762 S.W.2d 314, 320-21 (Tex. App.—San Antonio 1988, writ denied). Racicot's last doctor visit for injuries was approximately two months before trial. She testified that her pain continues. In determining that there is a reasonable probability Racicot will incur future medical expenses, the trial court could consider the nature of Racicot's injuries, the medical care rendered before trial, her condition at the time of trial, and recommended future medical

11

care. *See Blankenship v.* Mirick, 984 S.W.2d 771, 778-89 (Tex. App.—Waco 1999, pet. denied). Given the past expenses, her condition, and likely continued treatment, we cannot say the trial court's award of future medical expenses is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

PAIN AND MENTAL ANGUISH

Flynn maintains Racicot offered no medical testimony establishing a reasonable probability of pain and suffering resulting from the accident. According to Flynn, Racicot "offered no competent or sufficient evidence as to the alleged nature, duration, and severity of . . . her mental anguish, thereby establishing a substantial interruption in her daily routine, or circumstantial evidence of a high degree of mental pain and distress that is greater in degree than mere worry, anxiety, vexation, embarrassment, or anger or to differentiate her long-standing impairment or interruption of her daily abilities from the incident made the basis of this suit."

A plaintiff is not required to testify about a specific dollar amount to support an award for pain and mental anguish. *See Baylor Med. Plaza Servs. Corp. v. Kidd*, 834 S.W.2d 69, 78 (Tex. App.—Texarkana 1992, writ denied). The plaintiff's evidence must describe "'the nature, duration, and severity of [her] mental anguish, thus establishing a substantial disruption in [her] daily routine.'" *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). This detailed evidence, whether from the testimony of the plaintiff, a third party,

or an expert, is more likely to provide a fact finder with adequate information to assess mental anguish claims. *Parkway Co*., 901 S.W.2d at 444. Mental anguish damages are also recoverable for the aggravation of pre-existing medical conditions. *See Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 952-53 (Tex. App.—San Antonio 1997, no writ). Evidence of continuing pain may support an award of future physical pain and future mental anguish. *See Dawson v. Briggs*, 107 S.W.3d 739, 751-52 (Tex. App.—Fort Worth 2003, no pet.); *see also Figueroa*, 318 S.W.3d at 62 ("'The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss.'") (quoting *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.)). To recover damages for future medical anguish, Racicot must demonstrate "a reasonable probability" that she will "suffer compensable mental anguish in the future." *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008).

Racicot testified that after the fusion operation, but before the car accident, she was at about "80 percent improved," and that her pain was manageable. She testified that, within hours of the accident, she felt pain and that after the accident she was "[m]ore like 20 to 30" percent. The emergency room records, doctor's records, and records from her physical therapy document her complaints of pain. Racicot experienced painful swelling in her back, sharp pains, and poor mobility. She had problems climbing stairs and

13

dressing herself. At the time of trial, she was experiencing pain. The trial court's awards for past and future pain and mental anguish are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

IMPAIRMENT

Flynn challenges the sufficiency of the evidence supporting the trial court's award for past and future physical impairment. According to Racicot's testimony, because of the restriction imposed regarding how much she could lift, she could not return to her former delivery job even though the doctor had released her to go back to work. Although her job at the time of trial involved some physical labor, she claimed her co-workers have assisted her with tasks she cannot do. Flynn contends that the evidence admitted at trial showed that Racicot is not impaired from the accident, that Racicot moved to a more physically demanding job, and that she has missed no time from work in that new employment position. Flynn maintains that any impairment Racicot is suffering from is a result of her pre-existing condition.

"Physical impairment" encompasses the "loss of enjoyment of life," the effect of which must be substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003); *Patlyek v. Brittain*, 149 S.W.3d 781, 785-86 (Tex. App.—Austin 2004, pet. denied). The impairment must produce an obvious separate and distinct loss for which the plaintiff should be compensated, or the plaintiff must produce some

14

evidence showing the tasks or activities she can no longer perform. *See Estrada v. Dillon*, 44 S.W.3d 558, 560-62 (Tex. 2001); *see also Figueroa*, 318 S.W.3d at 64-65.

Racicot testified that as a result of the injuries she suffered from the accident, she has trouble bending, has trouble going up and down stairs, and can no longer mow her lawn or clean her car. These complaints are supported by the medical records admitted at trial. She testified she can no longer ride a horse, dance, or swim, and she is no longer able to do things with her grandchildren that she had planned. On this record, we cannot say that the trial court's awards for physical impairment are clearly wrong and unjust.

### LOST WAGES

Flynn also challenges the sufficiency of the evidence supporting the trial court's award of lost wages. Flynn claims Racicot provided no evidence other than her own testimony to prove her wage earnings or losses. The trial court considered evidence that before the accident Racicot was earning $7.72 per hour as a delivery driver, and worked forty hours a week. She testified that, under doctor's orders after the accident, she was off work for a certain time, unable to work, and lost $6,176 in wages because of the accident. The trial court's determination that those lost wages were caused by the accident is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellant's issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on September 25, 2012
Opinion Delivered February 7, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.

16