**Affirmed and Memorandum Opinion filed August 2, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00642-CV

---

### MEGA BUILDERS, INC., D/B/A MEGA & ASSOCIATES, Appellant

### V.

### BELL TECH ENTERPRISES, INC. AND TRIMCOS LLC, Appellees

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2014-47565**

---

## MEMORANDUM OPINION

In this construction dispute, appellant Mega Builders, Inc., d/b/a Mega & Associates, appeals the trial court's judgment in favor of appellees Bell Tech Enterprises, Inc. and Trimcos LLC. Bell Tech entered into a contract with Trimcos to construct an office building. By a separate contract, Trimcos engaged Mega to provide labor and materials for construction. After a payment dispute, Mega left the project and sued Trimcos and Bell Tech for, among other things, breach of contract. Trimcos counterclaimed, contending it overpaid Mega. A jury found that Mega

breached the contract and that Trimcos did not breach the contract, and awarded Trimcos damages. Consistent with the verdict, the trial court signed a judgment awarding Trimcos damages against Mega.

On appeal, Mega argues that the trial court's exclusion of two exhibits was error and led to the rendition of an improper judgment. Concluding that the trial court either did not abuse its discretion or that any error in excluding the evidence was harmless, we affirm.

## Background

This dispute stems from construction of an office building in Houston. Bell Tech is the building owner. At trial, the parties introduced two contracts into evidence. The first contract was between Bell Tech and Trimcos. That contract was signed April 25, 2013. The second contract was between Trimcos and Mega and is dated May 1, 2013. The price of both contracts was the same: $3.7 million. Under both contracts, work was to begin in May 2013 and be substantially completed by mid-March 2014.

According to Mega, Trimcos received periodic payments from Bell Tech for Mega's work but withheld portions of those payments from Mega. D.J. Mody, Mega's owner, testified that he was "consistently starving for funds." In January 2014, Mody learned that the bank had distributed more money to Trimcos than Trimcos had paid Mega. Mody felt "cheated," and Mega demanded an accounting and supplemental payment from Trimcos.

Trimcos provided an accounting of amounts invoiced and paid as of February 2014 under the May 1, 2013 contract. The accounting is a three-page spreadsheet reflecting billing details, payment and adjustment details, retention amounts,

2

discounts, and a balance due. The balance owed to Mega as of February 2014 is stated to be $23,551.28.

Mega contends it agreed with Trimcos in March 2014 to a final settlement sum Trimcos was to pay to Mega. Under the alleged agreement, (1) Mega received an immediate payment of $23,551.28 (per the accounting), and (2) Trimcos would pay a previously withheld "retainage" of $75,622.98.[1] The document stated:

> Received $23,551.28 from TRIMCOS, LLC as full and final settlement subject to retention amount ($75,622.95) for Belltech Office Building. Project address 14602 Presidio Sqr., Houston.

The document was signed by representatives of Mega and Trimcos and dated March 3, 2014. The document included a photocopy of a check issued by Trimcos to Mega in the amount of $23,551.28. The February 2014 accounting and the alleged March 3, 2014 settlement agreement are the important documents for purposes of this appeal. They are identified in our record as Mega Exhibits 9 and 10, respectively.

Mega left the project in March 2014. According to Raffy Bell, Bell Tech's owner, the only completed work at that point was the building's foundation. Trimcos completed construction of the building.

A few months after Mega left the project, it filed a mechanic's and materialman's lien against the building project, claiming it had not been paid

---

[1] Retainage means "an amount representing part of a [construction or repair] contract payment that is not required to be paid to the claimant within the month following the month in which labor is performed, material is furnished, or specially fabricated material is delivered." Tex. Prop. Code § 53.001(11). To benefit potential lien claimants, the Property Code requires an owner of a construction or repair project to retain 10% of either the contract price of the work or the value of the work if there is no contract price. *See id.* §§ 53.101(a), 53.102.

$107,973.30. Mega also claimed it held a constitutional lien as an original contractor on the Bell Tech project.

Mega then sued Bell Tech and Trimcos, asserting breach of the April 25, 2013, and May 1, 2013 contracts. Mega did not allege that Trimcos breached the purported March 2014 settlement agreement. Mega also asserted a fraud claim against Bell Tech and Trimcos in the alternative, and asserted a claim for unjust enrichment and quantum meruit against Bell Tech. Mega alleged that it substantially performed the work contemplated by the May 1, 2013 contract, but had not been paid all amounts due for its labor or materials. Mega sought $128,321.37 in liquidated damages, unliquidated damages for its non-contract claims, and foreclosure on the statutory and constitutional liens on Bell Tech's building.

Trimcos filed a breach of contract counterclaim, asserting that Trimcos was entitled to a refund of money it allegedly overpaid Mega. Alternatively, Trimcos asserted a claim for money had and received. Bell Tech answered Mega's petition but asserted no counterclaims.

Before trial, defendants Bell Tech and Trimcos filed a motion in limine, seeking to exclude mention of any agreements that did not form a basis of Mega's claims. In particular, the defendants claimed Mega's Exhibits 9 and 10 were irrelevant because Mega had not pled breach of any purported settlement agreement. Further, Mega argued that the exhibits were inadmissible under Texas Rule of Evidence 408.[2] The trial court granted the motion in limine. The next day, the trial

---

[2] Rule 408, governing "Compromise Offers and Negotiations," provides:

(a) Prohibited Uses. Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

court ruled that it was excluding the exhibits on grounds that they constituted evidence of a settlement agreement.[3] Mega presented the exhibits as an offer of proof, and the court accepted them.

After a three-day trial, the jury found:

(a)    Mega entered into the May 1, 2013 contract with Trimcos to construct the office building;

(b)    Mega did not enter into the May 1, 2013 contract with Bell Tech to construct the office building;

(c)    Mega failed to comply with the May 1, 2013 contract;

(d)    Bell Tech and Trimcos did not fail to comply with the May 1, 2013 contract;

(e)    Mega's failure to comply was not excused;

(f)    Mega was an original contractor on the project;

(g)    Trimcos did not underpay Mega;

(h)    Trimcos overpaid Mega $23,159.53;

(i)    neither Trimcos nor Bell Tech failed to promptly pay any money due to Mega; and

(j)    Mega did not perform any compensable work for Bell Tech for which Mega was not paid.

Trimcos and Bell Tech moved to enter judgment on the jury verdict and Trimcos also moved for partial judgment notwithstanding the verdict ("JNOV"). The defendants asked the court to render judgment ordering that Mega take nothing on its claims, that Mega's liens be dissolved, that Trimcos be awarded $23,159.53

---

(2) conduct or statements made during compromise negotiations about the claim. Tex. R. Evid. 408(a).

[3] The copy of the check included in Exhibit 10 was admitted into evidence separately as part of Trimcos's Exhibit 3, which contained copies of all checks remitted by Trimcos to Mega. Thus, the only part of Exhibit 10 excluded from evidence is the handwritten portion documenting the purported settlement agreement.

in actual damages, and that the defendants be awarded costs of court, pre-judgment interest, and post-judgment interest. Trimcos also requested additional damages in the amount of $196,303. Trimcos argued that the evidence conclusively established that it overpaid Mega by $219,462.53, and that the jury erroneously offset that amount by the profit that Mega would have realized upon completion of the contract. Because the jury found Mega breached the contract, Trimcos argued that Mega was not entitled to a credit for any contractual profit.

The trial court signed a judgment, which (1) ordered that Mega take nothing on its claims, (2) invalidated Mega's lien and ordered it removed from the real property records, (3) awarded Trimcos actual damages from Mega of $23,159.53,[4] and (4) awarded Trimcos pre-judgment interest, court costs, and post-judgment interest.

Mega appeals.

## Analysis

Mega presents four issues, all centering on the trial court's exclusion of Exhibits 9 and 10. Mega argues that the exhibits were improperly excluded under Rule 408 because they did not constitute a settlement offer or agreement. Further, Mega contends the trial court's erroneous ruling probably resulted in rendition of an improper judgment because it led to the jury's adverse findings in response to the breach and damage questions.

### A.    Error Preservation

Appellees argue that Mega did not preserve error. Appellees contend that the trial court did not exclude Exhibit 9 and therefore Mega failed to preserve any issue

---

[4] The trial court struck out a line that would have awarded Trimcos an additional $196,303, effectively denying Trimcos's motion for JNOV.

6

for our review as to Exhibit 9. Appellees also argue that Mega "failed to present to the trial court the same theory of admissibility that it is now making on appeal" as to both exhibits. The record does not support appellees' assertions.

During a pre-trial hearing, the trial court stated that "[i]n regards to Plaintiff's Exhibit 10 and 11, the Court is going to exclude those because they are discussing, per [Exhibit] 11, this was a settlement agreement." The defendants' attorney then asked, "[A]nd you're also excluding Exhibit No. 9 and 11? Nine is the discussion regarding the numbers. . . . So that needs to be excluded as well." The court stated, "So Plaintiff's 1, 10 and 11." The reference to Exhibit 1 appears to be either a misstatement or a mistranscription, as the record makes clear that the parties and the court were discussing only Exhibits 9, 10, and 11. Mega's attorney clarified that "Your Honor has excluded Exhibits 9, 10 and 11," and then requested that the court accept Exhibits 9, 10, and 11 as an offer of proof, which the trial court accepted. Thus, the record shows that the trial court excluded Exhibits 9 and 10. Tex. R. Evid. 103(a).

Stating the grounds for the offer of proof, Mega's attorney indicated that Exhibits 9 and 10 represented "balances presented to [Mega's owner Mody] by the Defendant Trimcos" and "a memorandum signed by Trimcos . . . by which Trimcos recognized that it was a sum further due to Mega in the amount of $75,622.95." *See* Tex. R. Evid. 103(c). These arguments align with Mega's contentions on appeal. *See* Tex. R. Evid. 103(a)(2) (to preserve error regarding a ruling excluding evidence, the substance of the evidence must be made known to the trial court by offer or apparent from the context of the questioning).

We conclude that Mega preserved its complaint regarding the exclusion of Exhibits 9 and 10.

**B.     Exclusion of Exhibits 9 and 10**

    1.     *Standard of review*

We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). Even if the trial court abuses its discretion in admitting or excluding evidence, a party seeking to reverse a judgment based on evidentiary error must demonstrate harm by proving that the error probably resulted in rendition of an improper judgment. *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). To determine whether evidentiary error probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The complaining party must demonstrate that the judgment turns on the particular evidence that was excluded or admitted. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). A reviewing court ordinarily will not reverse a judgment based on an erroneous exclusionary ruling when the excluded evidence is cumulative or not controlling on a material issue dispositive to the case. *Id.*

    2.     *Exhibit 9*

We presume without deciding that the trial court abused its discretion by excluding Exhibit 9, and we proceed to a determination of whether the exclusion caused Mega harm—i.e., whether the exclusion probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Mega alleges that the exclusion led the jury to answer a number of questions erroneously.

Exhibit 9, which is a summary of the invoices submitted by Mega and the amounts paid by Trimcos, is cumulative of other evidence properly admitted and

considered by the jury. Exhibit 9 identifies Invoices #1-3, 5-12, 14 (though the amount of Invoice #9 is left blank). Trimcos introduced copies of each of these invoices, as well as other invoices not included in Exhibit 9. Trimcos also introduced copies of checks issued to Mega, as referenced in Exhibit 9. Finally, the amount "due after adjustment," per Exhibit 9, is $23,551. Trimcos introduced independent evidence that it paid Mega this amount. Exhibit 9 also listed the retainage amount of $75,622.98 Mega claimed it was owed. But Mega introduced other evidence supporting its allegation that Trimcos owed it retained funds. In fact, Mega argued and presented evidence that the amount of retainage Trimcos owed was $196,000, a far greater sum than the $75,622.98 amount noted on Exhibit 9.

Viewing the other evidence in the record, we cannot say that the exclusion of Exhibit 9 caused Mega any harm. *See Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 441 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex. 1990) (evidence not harmful when it was "entirely cumulative" of other testimony).

3. *Exhibit 10*

We next turn to the trial court's exclusion of Exhibit 10. Exhibit 10 states that Mega received $23,551.28 from Trimcos on March 3, 2014, "as full and final settlement subject to retention amount ($75,622.95) for Belltech Office Building." The trial court excluded the exhibit as evidence of a settlement agreement. *See* Tex. R. Evid. 408(a) (evidence of compromise offers or agreements "is not admissible either to prove or disprove the validity or amount of a disputed claim").

Mega argues that Exhibit 10 is not evidence of compromise and settlement, but rather an acknowledgement by Trimcos of the total amount due for Mega's work, including payment of retained funds, as of February 2014. Mega's own characterization of events belies its argument. A few months before Mega left the

9

project, Mody demanded that Trimcos's owner "make [a] payment to avoid problems on the project." After Trimcos allegedly failed to make timely periodic payments, Mega "demanded an accounting," and the parties eventually "reached an accord" that Mega would receive an immediate payment of $23,551.28 and a future payment of withheld retainage. Mega admits to leaving the project, due to the ongoing payment disputes. The plain text of Exhibit 10—that the consideration mentioned was in "full and final settlement" of Mega's work on the building—supports a reasonable conclusion that Exhibit 10 is evidence of a compromise or settlement and was properly excluded. *See, e.g., Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 649 (Tex. 1995) ("Settlement agreements . . . , of course, are not admissible at trial to prove liability."); *Vinson Minerals, Ltd. v. XTO Energy, Inc.*, 335 S.W.3d 344, 354 (Tex. App.—Fort Worth 2010, pet. denied) (holding text of letter supported reasonable conclusion that letter constituted settlement offer). In its reply brief, Mega admits that Exhibit 10 "was, at one time, a putative settlement agreement." Additionally, the trial court's ruling was consistent with Mega's Exhibit 11, also excluded, which consisted of an email exchange between the parties and referred to the March 3, 2014 agreement as a settlement.

Mega argues alternatively that even if Exhibit 10 constitutes a settlement agreement, the trial court nevertheless should have admitted it as impeachment evidence, which Mega contends is a "permissible use" under Rule 408(b). Rule 408(b) provides that the trial court may admit evidence of a compromise offer or agreement for other purposes, "such as proving a party's or witness's bias, prejudice, or interest, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Tex. R. Evid. 408(b).

Mega's argument misses the mark. Trimcos's claim was that Mega breached the contract, and that Trimcos was entitled to a refund of overpayments. Mega

insists that Exhibit 10 was crucial in "negat[ing] Trimcos' claim of overpayment." That is, Mega sought to admit Exhibit 10 to "prove or disprove the validity or amount of a disputed claim." Tex. R. Evid. 408(a). This is a prohibited use of the document; Mega's stated purpose does not fall within Rule 408(b)'s exception. Regardless whether Exhibit 10 was offered as direct or impeachment evidence, Mega sought its introduction to disprove Trimcos's claim of overpayment. Mega does not claim that Exhibit 10 was relevant to bias, prejudice, interest, or any other permitted use stated in the rule.

Whether evidence is impermissibly offered as evidence of liability or for some other valid reason is a matter within the trial court's discretion. *See Tatum v. Progressive Polymers, Inc.*, 881 S.W.2d 835, 837 (Tex. App.—Tyler 1994, no writ). For the reasons stated, we hold that the trial court did not abuse its discretion in excluding Exhibit 10 on Rule 408 grounds.

Even if the court erred, however, we conclude that Mega suffered no harm. Exhibit 10 is not controlling on a material issue because Mega did not sue for breach of any alleged settlement agreement. *See Bartosh v Gulf Health Care Ctr.-Galveston*, 178 S.W.3d 434, 439 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (to establish harm, appellant must demonstrate that the excluded evidence was controlling on a material issue).

Further, Mega fails to explain how the admission of Exhibit 10 would have led the jury to reach a verdict more favorable to Mega. Mega's theory at trial—both in support of its affirmative claim for damages and in opposition to Trimcos's overpayment claim—was that Trimcos did not pay Mega what Mega was owed. According to Mody, Mega's owner, Trimcos received money from either Bell Tech or the bank that should have been disbursed to Mega. In support, Mega relied on a bank loan document, showing that Bell Tech had retained $196,303, which

11

represented 10% of the completed work as of mid-March 2014. Mody testified that he expected to be paid his profit and overhead from the retainage at the end of the project. At the end of the trial, Mega argued to the jury that it was owed at least $196,000.

Trimcos, on the other hand, argued that it had overpaid Mega by $219,462.55, the difference between the total invoiced by Mega for its labor costs and the total paid by Trimcos before Mega left the project. The jury awarded Trimcos $23,159.53, which is the difference (less two cents) between what Trimcos and Mega, respectively, requested. Accordingly, the jury likely credited Mega's argument that it was entitled to $196,303 in retainage, an amount substantially greater than the $75,622.98 amount referenced in Exhibit 10. Thus, we are not persuaded that the exclusion of Exhibit 10 led to the rendition of an improper verdict. *See, e.g., Castillo v. Am. Garment Finishers Corp.*, 965 S.W.2d 646, 653 (Tex. App.—El Paso 1998, no pet.) (erroneous exclusion of testimony regarding doctor's bill was harmless, when plaintiff presented other evidence to establish the same fact and the jury awarded him the full amount of the bill).

\*　　\*　　\*

Based on the above, we conclude that any error in the trial court's exclusion of Exhibits 9 and 10 probably did not lead to the rendition of an improper judgment. Accordingly, we overrule all of Mega's issues on appeal.

## Conclusion

We affirm the trial court's judgment.

/s/　　Kevin Jewell
　　　　Justice

Panel consists of Justices Busby, Brown, and Jewell.

12